**IN THE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TERRANCE SYKES, JR.,**

    **Plaintiff,**

**v.**                                                   **Civil Case No. 5:13cv92**
                                                      **Judge Stamp**

**UNITED STATES OF AMERICA,**

    **Defendant.**

## REPORT AND RECOMMENDATION

The *pro se* plaintiff, an inmate previously incarcerated at USP Hazelton[1] in Bruceton Mills, West Virginia, initiated this Federal Tort Claims Act action on July 18, 2013,[2] by filing a complaint along with a motion for leave to proceed *in forma pauperis* ("IFP"), and supporting documents. By Order entered July 22, 2013, the plaintiff was granted permission to proceed IFP but directed to pay an initial partial filing fee ("IPFF"). The plaintiff paid the requisite fee on September 13, 2013.

On September 17, 2013, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not warranted. Accordingly, the defendant was ordered to answer the complaint. On September 26, 2013, the plaintiff moved to amend the complaint. By Order entered October 1, 2013, the plaintiff's letter motion to amend was granted. The plaintiff filed his amended complaint on October 23, 2013. On October 23, 2013, the defendant was directed to answer the amended complaint. The defendant filed an answer to the amended complaint on January 21, 2014. On February 10, 2014, the plaintiff moved to strike the defendant's affirmative defenses.

### I. Factual and Procedural History

**A. The Complaint**

---

[1] The plaintiff is now incarcerated at USP Lee in Jonesville, Virginia.

[2] The plaintiff also filed a Bivens action seeking relief for the same knee injuries on July 18, 2013. See 3:13cv84.

In the complaint, the plaintiff asserts that on August 31, 2010, while incarcerated at U.S.P. Hazelton, he injured his knees. The plaintiff maintains that the injuries occurred during a move through the "yellow corridor" to the recreation yard, when he tried to avoid a sudden violent altercation that erupted between two groups of inmates. The plaintiff indicates that he fell on un-level, rocky terrain and sustained a ruptured right patellar tendon and a mild lateral subluxation of the left knee, with a partial tear of the left proximal patellar tendon tear and tendinosis or tendinitis in his left knee. He alleges he suffered more damage and excruciating pain when Christopher Goisse, RN. ("Goisse"), a federal employee, attempted to transport him to health services by using a "dolly-like chair." Plaintiff contends that Goisse did not apply safety straps to keep him secure and when Goisse ran over a rock, the chair tipped, throwing plaintiff to the concrete, where he again landed on his knees, causing further injury. The plaintiff also alleges that despite his knee injuries, he was forced to bend his legs to accommodate chair transfer to health services. From there, the plaintiff alleges he was transferred to a local hospital by van, still in the "dolly chair," with no safety straps or seat belt. He alleges that he was instructed to "hang on to the seat belt" to secure the chair during transport, but that the chair slid throughout the trip, requiring him to apply pressure to his knee or knees to keep from falling, causing further knee pain.

The plaintiff underwent orthopedic surgical repair to his right patellar tendon on September 2, 2010. He alleges that aside from one session with an orthopedic specialist on November 24, 2010, he was denied physical therapy for his knee. The plaintiff maintains that due to the defendant's refusal to provide him with physical therapy to rehabilitate his knee, he has suffered a great deal of mental and emotional distress. The plaintiff further alleges that due to the obvious injury to his right knee, the injury to his left knee was overlooked and he did not receive timely or proper treatment for it. More specifically, the plaintiff alleges that his left knee was not x-rayed until December 21, 2010, and he was diagnosed with a mild lateral subluxation and a partial tear of the left proximal patellar tendon tear and tendinitis and/or tendinosis in it. As a consequence, the plaintiff alleges that he has to

walk with a brace, take anti-inflammatory medication for pain, and he needs surgery to completely remove the tendon and replace it with another, harvested from elsewhere in his body. He contends that he has subsequently developed chronic arthritis in his knees as a result of the injuries.

Further, the plaintiff alleges that the medical staff fraudulently failed to truthfully record how his injuries occurred, by conspiring to cover up how Goisse dropped him or how he was transported, by fabricating a story, and then all signing off on the story, in order to conceal their negligence and avoid liability.

In addition to his medical claims against the Hazelton medical staff regarding his improper transport using inadequate medical equipment after his initial fall; the denial or lack of physical therapy; failure to properly diagnose the condition of his left knee; and fraudulently creating his medical records, the plaintiff raises a negligence claim against the defendant, for its negligent failure to keep the prison grounds free from hazards.

As relief, the plaintiff seeks compensatory damages in the amount of $5,000,000.00 (Five Million Dollars).

**B. The Defendant's Answer**

The defendants deny the allegations in the complaint and asserts these affirmative defenses:

1) to the extent that the plaintiff's complaint includes allegations of fact, they are denied;

2) the complaint fails to state a claim upon which relief can be granted;

3) plaintiff's claims are untimely;[3] and

4) and 5) plaintiff failed to submit a Notice of Claim and a Screening Certificate of Merit, as required by the West Virginia Medical Professional Liability Act ("MPLA") and to the extent that plaintiff is asserting claims against medical staff at USP Lee, plaintiff has also failed to submit a

---

[3] The undersigned finds that the plaintiff's claims are timely; the date of injury was August 31, 2010; the plaintiff filed his SF-95 administrative tort claim with the BOP on July 23, 2012, 39 days before the West Virginia two-year statute of limitations ran. Once his administrative tort claim was filed, that tolled the state statute of limitations. Plaintiff then filed suit on July 18, 2013, four months after receiving his March 18, 2013 administrative tort claim denial letter, advising him of the applicable 6-month period in which to file timely file suit in federal court, well within the applicable FTCA statute of limitations.

3

Notice of Claim and a Certificate of Merit, as required by the Virginia Medical Malpractice Act ("VMMA"), thus all his medical claims are barred.

6) Plaintiff's injuries were proximately caused by natural injuries, conditions or disease processes, not by any negligence of the defendants.

7) Plaintiff's injuries were caused by his own negligence, which exceeded the negligence of any other party.

8) In the event damages are awarded to plaintiff, such damages are subject to the limitation provided by federal, West Virginia or Virginia law.

9) Plaintiff is prohibited from recovering an amount in excess of that set forth in his administrative claim.

10) To the extent plaintiff asserts medical negligence claims, the United States asserts all defenses available under the MPLA and VMMA.

11) The plaintiff's FTCA claims are barred for failure to exhaust available administrative remedies.

12) The Court lacks subject matter jurisdiction, because plaintiff's claims fall within the FTCA's discretionary function exception.

13) Service of process was defective.

14) The actions of others than the United States were the proximate cause of the plaintiff's damages, consequently, the doctrines of comparative fault, comparative contribution, and indemnification apply.

15) As a matter of law, plaintiff is not entitled to a jury trial under the FTCA.

16) The United States asserts the right to assert additional affirmative defenses as applicable.

## C. The Plaintiff's Motion to Strike

The plaintiff reiterates his claims and attempts to refute the government's arguments against the same. He asserts that because he is a *pro se* litigant, he is entitled to liberal construction, and that the defendant's pleading and defenses should be stricken as insufficient, frivolous, redundant, impertinent and/or immaterial.

## II. Standard of Review

## A. Dismissals for Frivolity or for Failure to State a Claim

The FTCA waives the federal government's traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Here, because all of the alleged negligent acts occurred in West Virginia, the substantive law of West Virginia governs this case.[4]

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Pursuant to the FTCA, the United State is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 2674 and 1346(b)(1); Medina v. United States, 259 F.23d 220, 223 (4th Cir. 2001). In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; and (3) injuries received thereby, resulting proximately from the breach of that duty. Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d898, 899 (W.Va. 1939).

### III. Analysis

**A. Plaintiff's Slip and Fall Claim**

---

[4] The undersigned finds that the record is devoid of any evidence that the plaintiff is asserting a claim against any medical or other staff at any federal facility other than USP Hazelton.

The plaintiff's first claim is that on August 31, 2010, while negotiating a move through the "yellow corridor" at USP Hazelton to the recreation yard, in an attempt to avoid a violent altercation that suddenly broke out between two groups of inmates, he "turned around and attempted to run and was tripped by uneven ground outside on the left . . . side by D-1 Unit at Hazelton, and took a hard fall on both of my knees."[5]

In order to establish a prima facie negligence claim in a "slip and fall" case, the plaintiff must show (1) that the owner had actual or constructive knowledge of the defective condition; and (2) that the invitee had no knowledge of the substance or condition or was prevented by the owner from discovering it. McDonald v. University of W.Va. Board of Trustees, 444 S.E.2nd 57, 60 (W.Va. 1994). Stated differently, "an owner of business premises is not legally responsible for every fall which occurs on his premises. He is only liable if he allows some hidden, unnatural condition to exist which precipitates a fall. He is not responsible if some small characteristic, commonly known to be a part of the nature of the premises, precipitates a fall." Id.

Here, the plaintiff cannot reasonably claim that he was unaware of the "uneven, bumpy, rocky"[6] condition of the area variously described as "on the recreation yard"[7] or as the grounds "outside on the left side by the D-1 Unit at Hazelton," an area that the undersigned must assume that the plaintiff traveled through or to, at a minimum, at least once a day on a daily basis. Indeed, by his own admission, the plaintiff describes the allegedly hazardous area as one "that was plain and obvious, to be unleveled, rocky and bumpy[,]" and one constituting "plain and obvious hazardous conditions[.]"[8] Moreover, despite the plaintiff's allegation that the area constituted an "unsafe condition" that "should have received immediate maintenance, to assure inmates [sic] physical

---

[5] Dkt.# 1-2 at 3-4.

[6] Dkt.# 36 at 9.

[7] Dkt.# 1-7 at 4.

[8] Dkt.# 36 at 11.

6

safety," plaintiff has not established that the defendant did in fact have *actual* knowledge of any defect that precipitated his fall. McDonald, *supra* at 61. "[T]here is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." Id.

Accordingly, the plaintiff has failed in his burden to establish a prima facie negligence claim against the defendant for his slip and fall, sufficient to entitle him to compensation under the FTCA.

## B. Medical Negligence Claims

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

(a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

**§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) *At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim* on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, *together with a screening certificate of merit*. The screening certificate of merit shall

be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

W.Va. Code §55-7B-6 (emphasis added).

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D. W.Va. 2004).[9]

With regard to the appropriate standard of care, the plaintiff has completely failed to sustain his burden of proof. The undersigned construes plaintiff's attachment of several medical articles[10] about the structure of the knee and various types of knee injuries, which appear to have been downloaded from the internet, as plaintiff's attempt to assert the standard of care for his knee injuries. However, the articles do not assert, much less establish, the standard of care for the diagnosis or treatment of a ruptured patellar tendon; lateral subluxations of the knee; partial tears of the proximal patellar tendon; or tendinosis and/or tendinitis; let alone safe medical transport; or the guidelines and/or commonly accepted standards for appropriate medical record documentation.[11] Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a

---

[9] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care," causing him injury.

[10] Dkt.# 36-15 and 36-16.

[11] Plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of a ruptured or partially torn patellar tendon; lateral subluxations of the knee; tendinosis or tendinitis, safe medical transport; or the commonly accepted standards for appropriate medical record documentation.

qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant's breach of the duty of care. Moreover, to the extent the plaintiff's medical negligence claims arise in West Virginia, there is nothing in the complaint or answer which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, here, the plaintiff has failed to state a claim upon which relief can be granted.

### IV. Recommendation

For the foregoing reasons, the undersigned hereby recommends that the complaint be **DISMISSED with prejudice**. Further, the undersigned recommends that the plaintiff's pending Letter Motion to Amend/Correct Order to Answer (Dkt.# 30) be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this recommendation, **or by May 27, 2014,** any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208.

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

DATE: May 13, 2014

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE